## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PROJECT ON GOVERNMENT** ) | |
| **OVERSIGHT, INC.** ) | |
| 1100 13th Street, N.W. ) | |
| Suite 800 ) | |
| Washington, DC. 20005, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | |
| DONALD J. TRUMP, ) | |
| in his official capacity as President ) | |
| of the United States ) | |
| 1600 Pennsylvania Avenue, N.W. ) | |
| Washington, D.C. 20500, ) | |
| ) | |
| U.S. DEPARTMENT OF GOVERNMENT ) | |
| EFFICIENCY, ) | |
| 736 Jackson Place, N.W. ) | |
| Washington, D.C. 20503 ) | |
| ) | |
| U.S. DOGE SERVICE, ) | |
| 736 Jackson Place, N.W. ) | |
| Washington, D.C. 20503 ) | |
| ) | |
| U.S. DOGE SERVICE TEMPORARY ) | |
| ORGANIZATION, ) | |
| 736 Jackson Place, N.W. ) | |
| Washington, D.C. 20503 ) | |
| ) | |
| Administrator, ) | |
| U.S. DOGE Service Temporary ) | |
| Organization ) | |
| 736 Jackson Place, N.W. ) | |
| Washington, D.C. 20503 ) | |
| ) | |

Defendants.                    )
_____)

## COMPLAINT

1.      This is a civil action for declaratory, injunctive, and mandamus relief brought under the Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq.* ("APA"); the Presidential Records Act, 44 U.S.C. §§2201, *et seq.* ("PRA"); the Federal Records Act, 44 U.S.C §3101, *et seq.* ("FRA"); the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the All Writs Act, 28 U.S.C. § 1651, challenging as contrary to law Defendants' recordkeeping policies and practices that treat federal agency records of Defendants U.S. Department of Government Efficiency ("DOGE") and U.S. DOGE Service Temporary Organization ("USDS") as presidential records under the PRA and beyond the scope of the Freedom of Information Act ("FOIA").

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States), 28 U.S.C. § 1361 (mandamus), 5 U.S.C. §§ 702 and 706 (APA), and 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment Act).

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (e).

## PARTIES

4.      Plaintiff POGO is a nonpartisan independent organization based in Washington, D.C. and organized under section 501(c)(3) of the Internal Revenue Code. Founded in 1981, POGO champions reforms to achieve a more effective, ethical, and accountable federal government that safeguards constitutional principles. POGO's investigators and journalists take leads and information from insiders and verify the information through investigations using FOIA, interviews, and other fact-finding strategies. POGO's investigative work has been

recognized by Members of Congress, executive branch officials, and professional journalism organizations. For instance, in 2015, POGO won the Robert D.G. Lewis Watchdog Award, the Society of Professional Journalists Washington, D.C. Professional Chapter's highest journalistic award, for reporting on the Department of Justice's opaque system for handling allegations of attorney misconduct within its ranks. In 2018, POGO won an award from the Society for Advancing Business Editing & Writing for its investigative series scrutinizing the government's oversight of offshore drilling. POGO extensively used records obtained under FOIA for both investigations. In 2023, POGO won a DC Dateline Award for excellence in journalism from the Society of Professional Journalists for work interrogating conflicts of interest in the financial auditing industry. In 2024, POGO won a silver medal for investigative journalism podcasting at the New York Festivals Radio Awards, and was nominated for an Ambie Award for excellence in podcasting.

5.    As a frequent FOIA requester POGO has a strong operational interest in government compliance with the recordkeeping obligations that the FRA imposes on all federal agencies and agency heads. The failure of agencies and agency heads to create and maintain their records impedes POGO's ability to obtain those records through the FOIA thereby impeding POGO's ability to fulfill its mission and impairs the informational rights that the FOIA confers on POGO.

6.    POGO's pending FOIA requests include requests made to the Office of Personnel Management, Office of Management and Budget, General Services Administration, Federal Bureau of Investigation, Central Intelligence Agency, Office of the Director of National Intelligence, National Reconnaissance Office, Department of Homeland Security, Department of Commerce, Department of Treasury, Department of Defense, Department of Justice, and

National Aeronautics and Space Administration for records concerning all noncareer and limited-term senior executives, special government employees, and Schedule C employees (including Temporary Transition Schedule C employees) who began on or after January 20, 2025. DOGE employees can be special government employees, according to the Executive Order creating DOGE, and some are documented as political appointees, such as a DOGE team member at the Department of Treasury who was in a temporary transitional Schedule C position.

7.      Defendant Donald J. Trump is President of the United States and is sued in his official capacity only. President Trump is subject to the requirements of the PRA, including the obligation to treat only presidential records as subject to the requirements of the PRA.

8.      Defendant U.S. Department of Government Efficiency is a federal agency within the meaning of the APA, 5 U.S.C. § 551(1), headquartered in Washington, D.C. and subject to the requirements of the FRA and the FOIA.

9.      Defendant U.S. DOGE Service ("USDS") is a federal agency within the meaning of the APA, 5 U.S.C. § 551(1), headquartered in Washington, D.C. and subject to the requirements of the FRA and the FOIA.

10.     Defendant U.S. DOGE Service Temporary Organization ("USDSTO") is a federal agency within the meaning of the APA, 5 U.S.C. § 551(1), headquartered in Washington, D.C. and subject to the requirements of the FRA and the FOIA.

11.     Defendant Administrator of USDSTO is subject to specified duties and obligations imposed by Presidential Executive Orders from President Trump to implement the President's DOGE agenda. As the head of an agency, the Administrator is subject to the recordkeeping requirements of the FRA, including, *inter alia*, the requirement to have and implement a recordkeeping policy for the agency's records.

## STATAUTORY BACKGROUND

### The Presidential Records Act

12.    In response to presidential misconduct revealed by the Watergate scandal, Congress enacted the PRA in 1978 to establish public ownership of presidential and vice presidential records, to impose record-keeping requirements on the President and Vice President, and to authorize the NARA to preserve and make publicly available presidential records. *See* Carl Bretscher, The President and Judicial Review Under the Records Act, 60 Geo. Wash. L. Rev., 1477, 1483 (1992) (PRA passed "to prevent a repeat of Watergate's legal drama surrounding ownership of presidential records").

13.    Toward that end, the PRA specifies that "[t]he United States shall reserve and retain complete ownership, possession, and control of Presidential records[.]" 44 U.S.C. § 2202.

14.    The PRA directs the President to "take all such steps as may be necessary to assure that the activities, deliberations, decisions, and policies that reflect the performance of his constitutional, statutory, or other official or ceremonial duties are adequately documented and that such records are maintained as Presidential records[.]" 44 U.S.C. § 2203(a).

15.    The PRA defines "Presidential records" broadly to include documentary materials "created or received by the President, the President's immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise or assist the President" in conducting activities related to the President's constitutional, statutory, or ceremonial duties.  44 U.S.C. § 2201(2). The PRA excludes from the definition of presidential records "personal records," defined as those "of a purely private or nonpublic character" unrelated to the President's constitutional, statutory, or ceremonial duties. 44 U.S.C. § 2201(3)

16.    Under the PRA, a President may designate a period of up to 12 years after the completion of his or her presidency during which his or her presidential records are not publicly accessible, including under the FOIA. 44 U.S.C. §§ 2204(a) and (b). After the expiration of any limits imposed by the PRA on public access to a former President's records, those records are administered under the FOIA. 44 U.S.C. § 2204(c)(1).

17.    Through the PRA Congress explicitly removed from the definition of presidential records "any documentary materials that are . . . official records of an agency" under the APA's definition of "agency." 44 U.S.C. § 2201(2)(A)(i). *See also Armstrong v. EOP*, 1 F.3d 1274, 1292 (D.C. Cir. 1993).

**The Federal Records Act**

18.    The FRA is a collection of statutes that governs the creation, management, and disposal of federal or agency records. 44 U.S.C. §§ 2101-18, 2902-09, 3101-07, and 3301-24. Congress enacted the FRA to ensure "[a]ccurate and complete documentation of the policies and transactions of the Federal Government." 36 C.F.R. § 102-193.10(a).

19.    Toward that end, the FRA requires federal agencies to establish; (1) a program to make and preserve agency records; (2) effective controls over the creation, maintenance, and use of records; and (3) safeguards against the removal or loss of records. 44 U.S.C. §§ 3101, 3102, and 3105.

20.    The FRA specifically mandates that "[t]he head of each Federal agency *shall make and preserve* records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency[.]" 44 U.S.C. § 3101 (emphasis added). The FRA defines the term "records" to include "all books, papers . . . or other documentary materials, regardless of physical form or characteristics . . . made or received by an agency of the United States Government under

Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency . . . as evidence of the organization, functions, policies, decisions, procedures, operations or other activities of the Government or because of the informational value of data in them." 44 U.S.C. § 3301.

21.     The FRA provides the exclusive procedure by which all federal records may be disposed of or destroyed. *See* 44 U.S.C. § 3314. Under its provisions, federal records may be disposed of or destroyed only with the authorization of the Archivist either through General Records Schedules or NARA-approved agency-specific disposition schedules. 44 U.S.C. §§ 3303a(a) and (d).

22.     The FRA generally requires that federal records, including those generated in personal electronic messaging accounts, be preserved in a government recordkeeping system. Consistent with this obligation the FRA prohibits agency officials from "create[ing] or send[ing] a record using a non-official electronic messaging account unless such officer or employee—(1) copies an official electronic messaging account of the officer or employee in the original creation or transmission of the records; or (2) forwards a complete copy of the record to an official electronic messaging account of the officer or employee not later than 20 days after the original creation or transmission of the record." 44 U.S.C. § 2911(a).

23.     To prevent the unlawful destruction or removal of records the FRA creates a "system of administrative enforcement." *Armstrong v. Bush*, 924 F.2d 282, 284 (D.C. Cir. 1991). This system imposes obligations on both agency heads and the Archivist.

24.     With respect to agency heads the FRA provides that if they become aware of "any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency" they must "notify the Archivist" and "with the assistance of the Archivist . . . initiate action through the

Attorney General for the recovery" of such records. 44 U.S.C. § 3106(a); *see also* 36 C.F.R.

§ 1230.14 (implementing NARA regulation detailing how agencies "must report promptly

any unlawful or accidental removal, defacing, alteration, or destruction of records in the

custody of that agency to NARA").

### The Freedom of Information Act

25.    The FOIA, enacted in 1966, established a statutory right of public access upon

request to documents held by Executive Branch agencies. The FOIA carries a "strong

presumption in favor of disclosure," *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991),

and its "limited exceptions do not obscure the basic policy that disclosure, not secrecy, is the

dominant objective of the Act." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976).

26.    Under the FOIA, virtually every record of a federal agency must be made

publicly available upon request unless it is specifically exempted pursuant to one or more of

the FOIA's nine exemptions. 5 U.S.C. § 552(b). Those government entities that fall outside of

the APA's definition of "agency" are not subject to the FOIA. *See, e.g.*, *Kissinger v. Reporters

Comm. for Freedom of the Press*, 445 U.S. 136, 156 (1980).

### FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF

27.    On January 20, 2025, Donald J. Trump was inaugurated as the 47th President of

the United States.

28.    After assuming office on January 20, 2025, President Trump issued Executive

Order 14158 entitled "Establishing and Implementing the President's 'Department of

Government Efficiency.'" ("DOGE EO") Section one of the DOGE EO states that its purpose is

to "establish[] the Department of Government Efficiency to implement the President's DOGE

Agenda, by modernizing Federal technology and software to maximize governmental efficiency

and productivity."

29.    Section three of the DOGE EO also renames the United States Digital Service as the United States DOGE Service ("USDS") within the EOP.

30.    The DOGE EO further establishes a USDS Administrator reporting to the White House Chief of Staff.

31.    The DOGE EO also establishes the U.S. DOGE Service Temporary Organization, headed by the USDS Administrator and charged with "advancing the President's 18-month DOGE agenda," DOGE EO, Section 3 (b), and implementing a "Software Modernization Initiative." *Id.* § 4.

32.    The DOGE EO also directs each agency, in consultation with USDSTO, to establish a DOGE team "within their respective Agencies" consisting of at least four employees, who may include Special Government Employees. Agency heads are directed to coordinate the work of their DOGE Team Led with USDS.

33.    The DOGE EO directs the USDSTO Administrator to "commence a Software Modernization initiative to improve the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems," working with agency heads. DOGE EO Section 4.

34.    President Trump initially tapped Elon Musk and Vivek Ramaswamy to head DOGE. Hours after President Trump issued the DOGE EO, Ramaswamy bowed out leaving DOGE headed solely by Musk.

35.    On February 3, 2025, the White House confirmed publicly that Musk was officially joining the federal government as a special government employee and that he would submit a financial disclosure report that would not be made public. Theodore Schleifer & Eric Lipton, "Elon Musk's Financial Disclosure Will Not Be Made Public," *New York Times*, Feb. 11,

2025, https://www.nytimes.com/2025/02/11/us/politics/elon-musk-finances.html?smid=nytcore-ios-share&referringSource=articleShareAccording to public reporting, Musk received both a government email address and an office. *See, e.g.*, Francesca Chambers, "Trump makes DOGE head Elon Musk a 'special government employee' amid accusations of a takeover, *USA Today*, Feb. 3, 2025, https://www.usatoday.com/story/news/politics/2025/02/03/doge-elon-musk-special-employee-federal-government/78185365007/.

36.     On February 11, 2025, Trump issued Executive Order 14210 that lays out DOGE's role in "eliminating waste, bloat, and insularity" and its mandate to work with agency heads to create and implement hiring plans, including anointing DOGE with the power to decide which vacancies should be filled. The USDOGETO Administrator is obligated to "submit a report to the President regarding implementation of this order, including a recommendation as to whether any of its provisions should be extended, modified, or terminated."

37.     According to media reports, as of February 19, 2025, DOGE had 34 employees, of which 20 are listed as being at the Executive Office of the President and the remaining 14 staffers are listed as working at various federal agencies, *ProPublica*, Update 11, 2025, https://projects.propublica.org/elon-musk-doge-tracker/. According to Office of Management and Budget apportionment records, DOGE has an operating budget of $14.4 million. https://apportionment-public.max.gov/Fiscal%20Year%202025/Executive%20Office%20of%20the%20President/Excel/FY2025_Agency%3DEOP_Bureau%3DUNAN_TAFS%3D011-X-0041_Iteration%3D3_2025-02-08-11.33.xlsx.

38.     DOGE has established a website with a .gov URL (https://doge.gov/) that includes the header "An official website of the United States government" and a X account (@DOGE)),

both of which are used to promote its work, findings, and actions, such as cancelling contracts and grants.

39.     Employees of DOGE have been assigned government email accounts to be used in conducting official DOGE business.

40.     On February 17, 2025, in response to a lawsuit, *State of New Mexico v. Musk*, Civil No. 25-00429 (D.D.C.), the Director of the Office of Administration attested that Musk is neither the U.S. DOGE Service Administrator nor the USDSTO Administrator. The White House, however, has yet to identify the Administrator and on February 19, 2025, President Trump described Musk as "in charge" of DOGE. Andrea Shalal & Nandita Bose, "Trump appears to contradict White House, says Musk in charge of DOGE," *Reuters*, Feb. 20, 2025, https://www.reuters.com/world/us/trump-appearws-contradict-white-house-says-elon-musk-charge-doge-2025-02-20/.

41.     Even without the title of Administrator, Musk has functionally assumed leadership and the role of Administrator of USDS and USDSTO since their inception. In that capacity, he has been implementing his vision for what has been called "a dramatically smaller and weaker government." Jeff Stein, Elizabeth Dwoskin, Hannah Natanson & Jonathan O'Connell, "In chaotic blitz, Musk's core goals come into focus," *Washington Post*, Feb. 9, 2025, https://www.washingtonpost.com/business/2025/02/08/doge-musk-goals/. Musk has been described as 'exercising a level of control so sweeping that it is stunning former top White House officials[.]" Bobby Allyn & Shannon Bond, "Elon Musk is barreling into government with DOGE, raises unusual legal questions," *NPR*, Feb. 3, 2025, https://www.npr.org/2025/02/03/nx-s1-5285539/doge-musk-usaid-trump.

42.    Exercising power conferred on him by the President, Musk and the agencies he functionally leads, USDS and USDSTO, are implementing a "broad[] agenda to gut the civilian workforce, assert power over the vast federal bureaucracy and shrink it to levels unseen in at 20 years." Stein, et al., *Washington Post*, Feb. 9, 2025.

43.    According to public reporting, DOGE through USDS is "exercising significant authority by directing agencies to implement various policies, superintending personnel decisions purporting to close federal agencies, acquiring access to sensitive databases, and threatening agency officials who fail to comply." "Challenging DOGE," *Governing for Impact*, Feb. 2025, https://governingforimpact.org/wp-content/uploads/2025/02/Challenging-DOGE-Primer-final.pdf.

44.    That authority is reflected in the efforts by Musk and USDS and USDSTO to dismantle USAID, *see, e.g.*, Chambers, *USA Today*, Feb. 3, 2025, and their cancelling of DEIA-related contracts at 25 federal agencies and entities. X Jan. 29, 2025, https://x.com/DOGE/status/1884762497850146857.

45.    Musk and the agencies he functionally leads have employed similar tactics to seize control of the Consumer Financial Protection Bureau with the goal of eliminating the agency altogether. DOGE staff have advised GSA that they plan to automate most of that agency's jobs.

46.    Similarly, it has been reported that at the Education Department, DOGE staff, using AI, are analyzing data with the goal of cancelling every contract not legally required or essential to the agency's operations. Stein, et al., *Washington Post*, Feb. 9, 2025. And a DOGE employee has been editing the Education Department's website. *Id.*

47.     At the same time, Musk and DOGE have run roughshod over record keeping requirements designed, in part, to bring greater transparency and accountability to the government. For example, according to a recently filed lawsuit against the Office of Personnel Management, *Jane Does 1-2 v. OPM*, Civil No. 25-00234 (D.D.C. Jan. 27, 2025), a Musk employee working with DOGE set up a new server at OPM that bypassed federal law and was intended for sending government-wide emails. Billy Mitchell, "OPM calls to dismiss email server lawsuit, issues missing privacy assessment," *Fedscoop*, Feb. 5, 2025, https://fedscoop. com/opm-server-lawsuit-motion-to-dismiss-elon-musk-doge/.

48.     Those emails include one sent on January 28, 2025, entitled "Fork in the Road," a title that is identical to an email Musk sent to Twitter employees when he took over Twitter. The OPM Fork-in-the-Road email sets forth a deferred resignation program available to all federal employees. Those who resign under this program retain all pay and benefits through September 30, 2025, and are exempted from the in-person work requirements set out in that same email. *See* Office of Personnel Management, Fork in the Road, Deferred Resignation Email to Federal Employees, Jan. 28, 2025, https://www.opm.gov/fork.

49.     On February 5, 2025, it was reported that OPM had ordered DOGE employees to stop using Slack "while government lawyers attempt to transition the agency to one that is not subject to the Freedom of Information Act[.]" Jason Koebler & Joseph Cox, "DOGE Employees Ordered to Stop Using Slack While Agency Transitions to a Records System Not Subject to FOIA," *404media*, Feb. 5, 2025, https://www.404media.co/doge-employees-ordered-to-stop-using-slack-while-agency-transitions-to-a-records-system-not-subject-to-foia/. Another email advised DOGE employees that DOGE was splitting from OMB. *Id.*

50.     DOGE and its agency components have also wrapped themselves in secrecy, eschewing the applicability of the FOIA. In a further step toward secrecy, DOGE has entered into a memorandum of understanding with at least one agency, the Consumer Financial Protection Bureau ("CFPB "), that requires the CFPB to notify DOGE Service of FOIA requests related to the work of DOGE team employees at the CFPB as well as oversight inquiries from Congress, Inspectors General or GAO. Jason Leopold, "Elon Musk's DOGE Wants to Be Notified About Any Requests for Oversight," *Bloomberg*, Feb. 14, 2025, https://www.bloomberg.com/news/newsletters/2025-02-14/elon-musk-s-doge-wants-to-be-notified-about-foias.

51.     To implement their mission, DOGE staff have gained access to a vast swath of sensitive government data and records. For example, DOGE now has access and the ability to "delete, modify, or export the personal information of millions of federal workers and federal job applicants." Stein, et al., *Washington Post*, Feb. 9, 2025. DOGE is also seeking access to personal taxpayer data from the IRS that "includes detailed financial information about every taxpayer, business and nonprofit in the country[.]" Jacob Bogage & Jeff Stein, "Musk's DOGE seeks access to personal taxpayer data, raising alarm at IRS," *Washington Post*, Feb. 16, 2025, https://www.washingtonpost.com/business/2025/02/16/doge-irs-access-taxpayer-data/.

## PLAINTIFF'S CLAIMS FOR RELIEF

### CLAIM ONE
### (For a Declaratory Judgment that Recordkeeping Guidelines Issued and/or Implemented by Defendants Violate the PRA and the FRA)

52.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if set forth fully herein.

53.     As entities with a self-contained structure that exercise substantial independent authority, DOGE, USDS and USDSTO are agencies within the meaning of the APA, 5 U.S.C. 551(1).

54.     As agencies, DOGE, USDS and USDSTO are subject to the recordkeeping requirements of the FRA and their records are publicly accessible through the FOIA.

55.     The policies and practices of President Trump, DOGE, USDS and USDSTO to treat the records of DOGE and its agency components as subject to the PRA and consequently excluded from the FRA and FOIA are therefore arbitrary, capricious and contrary to law.

56.     Plaintiff POGO, an organization with a longstanding interest in the records of government agencies that uses the FOIA to access those records, has been harmed and will continue to be harmed by the policy and practice of Defendants to deprive POGO of access to the agency records of DOGE, USDS and USDSTO.

57.     Plaintiff is therefore entitled to relief in the form of a declaratory judgment that Defendants are in violation of their non-discretionary statutory responsibilities under the FRA to treat the records of DOGE, USDS and USDSTO as agency records subject to the FRA and publicly accessible through the FOIA.

58.     Plaintiff is also entitled to a declaratory judgment that Defendants' policy and practice of treating DOGE and USDS records as non-agency records subject to the PRA are arbitrary, capricious, and contrary to law.

**CLAIM TWO**
**(For Injunctive Relief and a Writ of Mandamus Compelling Defendants to Comply With Their Non-Discretionary Duties Under The FRA)**

59.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if set forth fully herein.

60.     The FRA is clear and the duties thereunder plainly defined: Defendants are required to treat the records of DOGE and its agency components as agency records subject to the FRA and publicly accessible through the FOIA.

61.     The PRA expressly excludes from its scope "any documentary materials that are . . . official records of an agency" under the APA's definition of "agency." 44 U.S.C. § 2201(2)(A)(i).

62.     Plaintiff, an organization that relies on records from agencies like DOGE, USDS and USDSTO to disseminate to inform and educate the public, has a direct interest in ensuring the records of DOGE, USDS and USDSTO are maintained, preserved, and accessible to the public in accordance with the provisions of the FRA and FOIA.

63.     By adopting a policy and practice of treating the agency records of DOGE, USDS and USDSTO as subject to the PRA and outside the scope of the FOIA, Defendants are violating their clearly mandated ministerial duties under 44 U.S.C. §§ 3101, 3102, and 3105.

64.     Plaintiff is therefore entitled to mandamus and injunctive relief compelling Defendants to comply with their statutory duties to treat the records of DOGE, USDS and USDSTO as agency records subject to the FRA and the FOIA.

## CLAIM THREE
**(For a Declaratory Judgment that Defendant Administrator of USDS's Recordkeeping Policies and Guidelines Violate Mandatory Duties Imposed By the FRA)**

65.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if set forth fully herein.

66.     The FRA imposes on the head of each agency the mandatory requirement to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency[.]" 44 U.S.C. § 3101.

67.    In direct defiance of that statutory mandate, Defendant Administrator of USDS and USDSTO has directed that the records of their recoreds be treated as presidential records under the PRA and outside the scope of the FOIA.

68.    In direct defiance of that statutory mandate, Defendant Administrator of USDS and USDSTO has also failed to create and implement a recordkeeping policy under the FRA for their records.

69.    Plaintiff, who has a longstanding interest in the records of government agencies and who uses the FOIA to access those records, has been harmed and will continue to be harmed by the policy and practice of Defendant Administrator to deprive them of access to the agency records of DOGE, USDS and USDSTO by treating those records as subject to the PRA.

70.    Plaintiff is therefore entitled to relief in the form of a declaratory judgment that Defendant Administrator of USDS and USDSTO is in violation of his/her non-discretionary statutory responsibilities under the FRA to create and implement a recordkeeping policy that treats the records of DOGE, USDS and USDSTO as agency records subject to the FRA and publicly accessible through the FOIA

71.    Plaintiff is also entitled to a declaratory judgment that Defendant Administrator's policy and practice of treating DOGE, USDS and USDSTO records as non-agency records subject to the PRA are arbitrary, capricious, and contrary to law.

### CLAIM FOUR
**(For Injunctive Relief and a Writ of Mandamus Compelling Defendant Administrator of USDS to Comply With the Non-Discretionary Duties Imposed By the FRA)**

72.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if set forth fully herein.

73.    The FRA imposes clear plainly defined duties: Defendant Administrator of USDS, as the head of an agency, must "make and preserve records containing adequate and proper

documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency[.]" 44 U.S.C. § 3101.

74.     Plaintiff, an organization that relies on records from agencies like DOGE, USDS and USDSTO to disseminate to inform and educate the public, has a direct interest in ensuring their records are maintained, preserved, and accessible to the public in accordance with the provisions of the FRA and FOIA.

75.     By failing to create and implement a recordkeeping policy that treats the records of DOGE, USDS and USDSTO as agency records under the FRA, Defendant Administrator is violating his/her clearly mandated ministerial duties under 44 U.S.C. § 3101.

76.     Plaintiff is therefore entitled to mandamus and injunctive relief compelling Defendant Administrator to comply with his/her statutory duty to make and preserve the records of DOGE, USDS and USDSTO as agency records subject to the FRA and the FOIA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Declare that Defendants' policy and practice of treating DOGE, USDS and USDSTO records as non-agency records subject to the PRA are arbitrary, capricious, and contrary to law;

(2) Order all defendants, in the form of injunctive and mandamus relief, to comply with their statutory duties to treat the records of DOGE, USDS and USDSTO as agency records subject to the FRA and the FOIA;

(3) Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

/s/Anne L. Weismann
Anne L. Weismann
(D.C. Bar No. 298190)
5335 Wisconsin Avenue, NW
Suite 640

Washington, DC 20015
Weismann.anne@gmail.com
(301) 717-6610

Dated: February 21, 2025                *Attorney for Plaintiff*